(835 P.2d 1385)

No. 66,663

*In re* TWO (2) BOSE SPEAKERS, Serial No. 121098; ONE (1) KENWOOD CASSETTE DECK, Model KX77CW, Serial No. 80806820; ONE (1) KENWOOD TUNER, Model KT87, Serial No. 80431074; and ONE (1) KENWOOD AMPLIFIER, Model KA127, Serial No. 80431384, with remote.

Opinion filed June 26, 1992.

*Geary N. Gorup,* of The Law Office of Geary N. Gorup, of Wichita, for appellant.

*Rachelle Worrall Smith,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, for appellee State of Kansas.

Before BRISCOE, C.J., RULON and Gernon, JJ.

GERNON, J.: This is an appeal from a court order to return property, which was pawned but was later seized as evidence, to its original owner.

Jerry King, d/b/a King's Pawn Shop, the appellant, took the property from a thief in exchange for a loan of $90. The pawn ticket indicates that King took the property from L.J. L.J. was never charged with any crime involving the theft of or possession of the property involved. The property was owned by Barbara Garnes, who reported it stolen. A police investigation found the property listed on King's pawn slip, where it was seized by the authorities after King signed a consent to search and a release for the property.

## Jurisdiction

King first challenges the jurisdiction of the district court to order the return of property to its owner when there is no criminal prosecution. King asserts that, under these circumstances, his interest in the property is superior to that of Garnes'.

King argues the statute dealing with seized property requires that a prosecution take place as a condition for the return of property to its "rightful owner." The statute in question, K.S.A. 22-2512, states in part:

"(1) . . . Where seized property is no longer required as evidence in the prosecution of any indictment or information, the court which has jurisdiction of such property may transfer the same to the jurisdiction of any other court, including courts of another state or federal courts, where it is shown to the satisfaction of the court that such property is required as evidence in any prosecution in such other court.

"(2) When property seized is no longer required as evidence, it shall be disposed of as follows:

"(a) Property stolen, embezzled, obtained by false pretenses, or otherwise obtained unlawfully from the rightful owner thereof shall be restored to the owner."

Kansas courts have addressed the issue of returning stolen property as part of a criminal proceeding, but we find no published case in which the issue was addressed where there was no criminal proceeding.

In *State v. Gunzelman*, 200 Kan. 12, 13-14, 434 P.2d 543 (1967), the court reasoned:

"It has been held that property or money lawfully in the hands of law enforcement officials for use as evidence in a criminal proceeding is regarded as being in *custodia legis* [citations omitted] and subject to the court's order as to disposition thereof in the same proceeding, rather than in a separate action [citations omitted]."

More recently, this court, in *State v. Antwine & McHenry*, 6 Kan. App. 2d 900, 904, 636 P.2d 208 (1981), *rev. denied* 230 Kan. 819 (1982), cited the language in *Gunzelman* referring to evidence *in custodia legis* (in legal custody). In *Antwine & McHenry*, the issue was the conflict between the accused's entitlement to use any exculpatory evidence and the rightful owner's right to the return of his property. Justice Holmes, sitting with this court, wrote in *Antwine & McHenry*:

"On the other hand, the plight of the victims and owners of physical evidence must also be given due consideration. It is tragedy enough that a person has been deprived of his property through some criminal act of another without such loss being compounded by any unnecessary delay in returning the property to its rightful owner. It is the duty of the prosecution and the court to see that a person criminally deprived of property has it restored to him, if possible, at the earliest opportunity consistent with the protection of the rights of both the State and the defendant." 6 Kan. App. 2d at 903.

The property involved here is held *in custodia legis*. The question then becomes one of how and under what procedures it may be disposed of.

Kansas courts have authority to hear both civil and criminal cases. Where no criminal action has been filed, the district court retains in rem jurisdiction over property held *in custodia legis*. This action to return property is not converted to a criminal action simply because it was brought by a district attorney. The language in *Antwine & McHenry* imposes a duty on the prosecution *and*

the court to restore property to its rightful owner at the "earliest opportunity," consistent with certain due process protections. To hold otherwise here would allow a pawnshop to potentially receive good title from a thief, hardly a concept to be encouraged by judicial action.

### Due Process

The proper disposition of property held *in custodia legis* is dependent upon certain minimum due process requirements having been met.

"At a minimum the essential elements of due process in an action affecting a person's life, liberty or property are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. [Citation omitted.]" *State v. Durst*, 235 Kan. 62, 66, 678 P.2d 1126 (1984).

The United States Court of Appeals for the Tenth Circuit, in *Wolfenbarger v. Williams*, 774 F.2d 358 (10th Cir. 1985), recognized that a pawnbroker's possessory interest was sufficient to require due process before the property is returned to its rightful owner.

Here, although the record does not show how King received notice of the hearing, the record does show that King appeared and had adequate notice to cite legal authorities to the court. He stated at the hearing that he had contacted an attorney, but that the attorney had a scheduling conflict.

Due process here requires that King have the opportunity to state his position. The record supports our conclusion that King had such an opportunity.

### Holder in Due Course

King argues that he was a "purchaser in good faith" and has a possessory interest against the rest of the world, although he admits that "a purchaser under defective title might not hold against the true owner." We agree with King on both counts. The important concept here is that the owner, not the rest of the world, was making the claim against the property.

Even though King is a good faith purchaser for value, he acquired possession from a thief who had void title, not voidable title, and who had no power to divest the original owner of the property. See 3 Anderson on the Uniform Commercial Code,

§§ 2-401:61 and 2-403:26 (3d ed. 1983); and 63A Am. Jur. 2d, Property § 44.

The regulations governing pawnbrokers also support the conclusion that a pawnbroker cannot acquire title through a thief. The Code of the City of Wichita, Charter Ordinance No. 134, § 18 (1991), provides:

"When converted or stolen property has been pawned or purchased by a pawnbroker, secondhand dealer, or precious metal dealer and the pawnbroker, secondhand dealer, or precious metal dealer refuses to redeliver such property to the rightful owner upon demand and presentation of a bill of sale or other proper indicia of ownership by the owner, and legal action by the rightful owner to recover the property becomes necessary, the court may assess the pawnbroker, if the court finds that the pawnbroker or secondhand dealer wrongfully withheld the converted or stolen property."

Section 11 requires pawnbrokers to keep detailed records of each transaction and provide a daily report listing all property received to the police department. Code of the City of Wichita, Charter Ordinance 134, § 11 (1991).

Because the pawnbroker is the one who deals with the thief, he or she should bear the risk of accepting stolen property. The pawnbroker's remedy in this case is to find the thief and recover against the thief for breach of the warranty of title in K.S.A. 84-2-312.

King argues that his rights are superior to Garnes' rights in the property because Garnes has been compensated by her insurance company and has signed a release. There is no evidence in the record, other than King's accusation, to support a conclusion that Garnes assigned her interest in the property to her insurer. The relationship between Garnes and her insurance company is a matter of contract. See *State v. Houck*, 240 Kan. 130, 135, 727 P.2d 460 (1986). Therefore, any interest the insurer may have in the property is governed by the contract of insurance. King, who is neither a party to that contract nor an intended third-party beneficiary, cannot enforce the insurer's rights. See, e.g., *Gillespie v. Seymour*, 14 Kan. App. 2d 563, 796 P.2d 1060 (1990).

If the insurer is entitled to subrogation because it has paid Garnes' claim, it is entitled to stand in the shoes of its insured, *Western Motor Co. v. Koehn*, 242 Kan. 402, 405, 748 P.2d 851

(1988), and assert Garnes' superior rights in the property in question. It is clear that King's right to possess the property is inferior to that of either Garnes or her insurer, regardless of which party has the ability to assert those rights against King. After the property is returned to Garnes, her insurer will have the opportunity to assert its subrogation rights against her.

Affirmed.