NOT DESIGNATED FOR PUBLICATION

No. 113,205

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM H. WHITE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed February 26, 2016. Affirmed.

*William H. White*, appellant pro se.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., PIERRON, J., and WALKER, S.J.

*Per Curiam*: William H. White appeals from the district court's order that his 2002 Jeep be sold at public auction after criminal charges related to its title were dismissed against him. Finding the court interpreted the law correctly, we affirm the decision.

FACTS

This case began in October 2013 when White attempted to title a 2002 Jeep in Johnson County, Kansas. White provided a vehicle title that read "'Pembina Nation, Little

1

Shell Band of North America.'" The title stated that "'Autobon'" was the Jeep's owner, and White said that Autobon was a trust and that he was an officer of that trust. The vehicle inspector noted that the title was printed on thicker paper than usual, that it looked like it had been made on a home computer, and that it was not signed by a representative of the agency that issued it. Because of these observations, the inspector refused to complete the inspection and issue a Kansas title.

White then contacted the Kansas Highway Patrol (KHP) to try to get his vehicle titled in Kansas. KHP conducted an investigation, after which the district attorney charged White with making a false writing, see K.S.A. 2015 Supp. 21-5824, based on the Pembina Nation title. White said that he was an appointed representative of the Pembina Nation, but KHP learned that the United States government does not recognize the Pembina Nation and that the tribe cannot issue vehicle titles. According to the charging affidavit, White said that he had purchased the Jeep from Crawford's Raytown Jeep as a representative of the Autobon trust, but he refused to give any additional information about the trust, such as an office address or a phone number.

In November 2013, the district court issued a warrant for White's arrest for making a false writing. White was appointed counsel. In May 2014, the State dismissed the complaint against White. No other details about the criminal proceedings appear in the record.

During the investigation, KHP seized the Jeep as evidence. After the charges were dismissed, White was informed that the Jeep would be returned to him if he could show proof of ownership and that if he could not show ownership, the Jeep would be sold at public auction. White then filed several pro se motions that the district court interpreted as motions seeking release of the Jeep.

The district court held a hearing on October 1, 2014, to determine whether White owned the vehicle. Although the court sent notice to the address White listed in his pleadings, White did not appear at the hearing, and the court ordered the Jeep to be sold at public auction. White called the court a few days after that hearing and filed more motions, which the district court interpreted as motions to reconsider its decision.

The district court held another hearing on November 10, 2014, and White appeared. The judge said, "I would like to return your vehicle to you, but under our statutes, I need to be able to see a valid title which shows that this vehicle belongs to you. Do you have that with you?" White replied that he had purchased the vehicle for a trust. White said he did not bring the vehicle title to the hearing because his public defender had told him that if he presented the title issued by the Pembina Nation, he would be arrested for fraud. White presented a sales receipt showing that Autobon purchased the Jeep from Crawford's Raytown Jeep, as well as a lien release that showed the release of the Jeep's previous owners' lien and a secure power of attorney from the Jeep's previous owners to Crawford's Raytown Jeep to disclose mileage and transfer ownership. White also presented a document from the Autobon trust stating that White was a manager of the trust. The trust documents do not appear in the record on appeal, but the district court noted that nothing in the documents indicated that they had been filed or accepted as proof of a valid trust in any state.

The district court asked if White had a Missouri title, and he said he could probably get one. The record on appeal includes a copy of a Missouri title, but it seems that it was not presented to the district court—the document's location in the record suggests that White submitted it with his notice of appeal. The Missouri title shows that the Jeep was transferred to Crawford's Raytown Jeep by its previous owners. It then shows a second transfer from Crawford's Raytown Jeep to Autobon, signed by White "for Autobon."

3

The district court found that the Pembina Nation title did not establish ownership because that tribe is not federally recognized and cannot issue valid vehicle titles. It further found that it had not seen any documentation with White's name on it or any convincing documentation that Autobon was an existing and valid trust or that White was affiliated with that trust. As such, the district court found that White had not proved that he owned the Jeep and ordered the Jeep to be sold at public auction.

White, without the assistance of counsel, has appealed to this court. The sale of the Jeep has been stayed pending this appeal.

ANALYSIS

White's arguments on appeal are wide ranging and sometimes unclear but, essentially, White argues for the return of his Jeep.

When the State seizes a person's property as evidence in an investigation, the district court acquires jurisdiction over that property and it becomes "'subject to the court's order as to disposition thereof in the same proceeding, rather than in a separate action.'" *State v. Mendenhall*, 18 Kan. App. 2d 380, 383, 855 P.2d 975 (quoting *State v. Gunzelman*, 200 Kan. 12, 14, 434 P.2d 543 [1967]), *rev. denied* 253 Kan. 862 (1993); accord *In re One 1993 Chevrolet Corsica*, 268 Kan. 759, 762, 999 P.2d 927 (2000). In other words, the district court has the authority to decide what to do with the property when it is no longer needed as evidence. *Mendenhall*, 18 Kan. App. 2d at 383. This authority is not affected by the outcome or status of the underlying criminal case—if a defendant is acquitted or if the charges are dismissed, the district court's authority to decide what to do with the property remains unchanged. 18 Kan. App. 2d at 382-83.

K.S.A. 2015 Supp. 22-2512 provides specific direction to the district court about what to do with property when it is not needed as evidence anymore. At issue in this case

4

is the provision for unclaimed property: "[P]roperty which is unclaimed or the ownership of which is unknown shall be sold at public auction . . . ." K.S.A. 2015 Supp. 22-2512(c)(3). If necessary, the district court should hold an evidentiary hearing to determine ownership. *State v. Markovich*, No. 105,100, 2011 WL 3795544, at *3-5 (Kan. App. 2011) (unpublished opinion) (due process entitles property owner to "an opportunity to be heard in a meaningful manner").

A hearing on a motion under K.S.A. 2015 Supp. 22-2512 for return of property is essentially a civil equitable proceeding. See *Markovich*, 2011 WL 3795544, at *6. What this court is concerned with is whether the district court properly balanced the competing equities—or principles of justice—in deciding whether return was in order. 2011 WL 3795544, at *6; see Black's Law Dictionary 656 (10th ed. 2009) (defining "equity"). The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have ended, but the person seeking return of the property must show that he or she lawfully owns it. *Markovich*, 2011 WL 3795544, at *6.

The State argues that this court should review the district court's decision for an abuse of discretion. But the case that the State cites for that proposition deals with a different statutory provision than the one at issue here. That case, *In re One 1993 Chevrolet*, concerns the statute's catch-all provision: "[U]nless otherwise provided by law, all other property shall be disposed of in such manner as the court in its sound discretion shall direct." K.S.A. 2015 Supp. 22-2512(c)(8); 268 Kan. at 761-62. This provision expressly grants the district court discretion, so this court can review decisions under that provision for an abuse of that discretion. 268 Kan. at 761-62.

But, contrary to the State's argument, the catch-all provision cited above is not the statute which controls disposition of White's Jeep. The more specific provision at issue in this case does not give the district court discretion; it simply states that if the property is

unclaimed or the property's owner is unknown, the district court "shall" direct that it be sold at public auction. K.S.A. 2015 Supp. 22-2512(c)(3). This court reviews the interpretation of statutes de novo, without deference to the interpretation of the lower court. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. 301 Kan. at 918. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Cady v. Schroll*, 298 Kan. 731, 738, 317 P.3d 90 (2014). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 298 Kan. at 738-39. With regard to this statute in particular, "[s]tatutes for the seizure and destruction of property are penal and must be strictly construed against the State and in favor of the owner." *State v. Jimenez*, 266 Kan. 59, 62, 966 P.2d 60 (1998).

Additionally, this court reviews a district court's factual findings to see if they are supported by substantial evidence, which is evidence that a reasonable person might accept as sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014).

Here, the district court acquired jurisdiction over the Jeep when KHP seized it as evidence while investigating White. See *Mendenhall*, 18 Kan. App. 2d at 383. The district court's authority to decide what happened to the Jeep when it was no longer needed as evidence was unaffected by the fact that the State dismissed the criminal charges against White. See 18 Kan. App. 2d at 383. The district court held an evidentiary hearing, found that White could not show that he owned the Jeep, and directed that it be sold at public auction. Essentially, the district court found that the Jeep's ownership was unknown.

6

K.S.A. 2015 Supp. 22-2512(c)(3) states simply that when ownership of property is unknown, the property will be sold at public auction. The district court interpreted this statute to mean that White needed to present some kind of documentation, ideally but not necessarily a title, to prove that he owned the Jeep. This interpretation is reasonable, since the statute calls for sale by public auction only if ownership is unknown. Until ownership is proven in some way, it is unknown. But the statute must also be strictly construed against the State. *Jimenez*, 266 Kan. at 62.

White presented or described five documents to the district court to attempt to establish ownership. First, White described a title issued by the Pembina Nation, but the court found that the Pembina Nation is not federally recognized, so any title it issued would not be valid. See *United States v. White*, No. 07-00395-01-CR-W-HFS, 2008 WL 4816987, at *2-3 (W.D. Mo.) (unpublished opinion) (noting that Pembina Nation is not federally recognized and cannot issue official documents such as license plates). This was also the title that started the entire investigation of White for making a false writing. Second, White presented a purchase receipt dated July 20, 2006, showing a sale of the Jeep from Crawford's Raytown Jeep to Autobon for $15,401.50. Third, White presented an undated power of attorney document showing the Jeep's transfer from the Graffs (the original owners) to Crawford's Raytown Jeep. Fourth, White presented a lien release showing that the Graffs' lien was released on July 6, 2006. White's name does not appear on the receipt, the power of attorney, or the lien release.

White claimed, however, that he was an officer of Autobon, which was listed as the purchaser on the sales receipt and which White said was a California trust. Fifth, White presented the district court with some documents related to this trust, which the court reviewed at the hearing. The title on the first page was "'Unincorporated irrevocable common-law pure trust Autob[o]n, California State, a republic, United States of America,'" and it appeared to be a trust creation document. Other trust documents listed White as a trust manager. The district court judge found that the trust documents had

nothing on them to indicate that they had been filed or accepted by California, stating, "These could have been just, quite frankly, typed out at your house."

So although there was some evidence presented that White was an officer of a trust called Autobon and that Autobon owned the Jeep, the district court was not persuaded that White owned the Jeep. That conclusion was supported by substantial evidence since White's name did not appear on any of the documents related to the Jeep's purchase and since the trust documents appeared unreliable. There was also substantial evidence supporting White's ownership, but an appellate court cannot generally reweigh the evidence on appeal. *Gannon*, 298 Kan. at 1175-76 ("In determining whether substantial competent evidence supports the district court findings, appellate courts disregard any conflicting evidence or other inferences that might be drawn from the evidence.").

During the hearing, the district court asked White if he had a title from Missouri. White replied that he could probably get one from the previous owner, but it appears that White did not present a Missouri title at that time. But when White filed his notice of appeal in the district court, he attached a copy of a Missouri title for the Jeep. Unfortunately, because this court does not hear new evidence, it can consider on appeal only the documents that the district court considered; under this usual rule, this court cannot consider the Missouri title. See *State v. Brownlee*, 302 Kan. 491, 505, 354 P.3d 525 (2015) (refusing to add documents to record on appeal that were not before district court).

We have carefully reviewed the briefs. Specifically, we note that White's submissions consist mainly of a broadly focused attack contending lack of jurisdiction by the court over matters concerning the Pembina Nation and himself as a Native American, an asserted conspiracy by the law enforcement officers and the prosecution to deprive tribes of their rights to private property, plus other less clearly articulated violations of

8

due process regarding this court action. These arguments were not raised in the district court, and this court cannot hear arguments raised for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014); *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011).

White also argues that because the criminal charges were dismissed, he is automatically entitled to get the Jeep back. This argument has no basis in the law. See *Mendenhall*, 18 Kan. App. 2d at 382-83. White asserts that the Pembina Nation is a sovereign nation and has authority to issue vehicle titles. This issue has been decisively settled by the federal courts, and White presents nothing in his briefs to persuade this court to depart from those rulings. See, *e.g.*, *White*, 2008 WL 4816987, at *3. White also alleges that he has been treated unfairly because he is a member of the Pembina Nation; but this argument was not raised below, and it has no basis in the record.

In his brief, White requests an injunction "against further same or similar acts against him or this Indigenous Nation in Kansas or by Kansas Officials." But "[m]otions by appellate counsel which are asserted within the text of an appellate brief do not comply with Supreme Court Rule 5.01 . . . and will not be considered." *Muzingo v. Vaught*, 18 Kan. App. 2d 823, Syl. ¶ 7, 859 P.2d 977 (1993); see Supreme Court Rule 5.01 (2015 Kan. Ct. R. Annot. 34). Because White did not follow Rule 5.01, this court need not consider his motion for an injunction. White also requests damages of $500,000, but he provides no recognizable theory about what entitles him to monetary damages—the district court's jurisdiction over the disposition of the Jeep is well established, although it is unfortunate that it has taken so long to resolve this issue. See *Mendenhall*, 18 Kan. App. 2d at 383.

We can also surmise that White would also complain about a lack of equity in the court's ruling if he had counsel on appeal or was prompted to do so, but in fact neither

before the district court nor on appeal does White argue that the district court's application of the law to the facts in this case was inequitable.

Lastly, the State argues that this court lacks jurisdiction to hear this case because White's notice of appeal is deficient. It is true that this court has jurisdiction only when the appeal conforms to statutory requirements. *State v. Garza*, 295 Kan. 326, 329, 286 P.3d 554 (2012). K.S.A. 2015 Supp. 60-2103(b) explains the information that should be contained in a notice of appeal: "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." See Supreme Court Rule 2.02 (2015 Kan. Ct. R. Annot. 12) (stating that notice of appeal must "be in substantial compliance with the judicial council form"). Nonetheless, courts liberally construe these requirements in the interest of assuring justice in every proceeding. *State v. Griffen*, 241 Kan. 68, 69-70, 734 P.2d 1089 (1987). Here, while White's notice of appeal does not comply with the judicial council form, this court cannot say that it is jurisdictionally deficient. White simply erred on the side of providing too much information, rather than not enough, in his notice of appeal.

Applying the usual rules here requires us to affirm the district court. Its interpretation of the statute was correct, the result was supported by substantial evidence, and this court cannot consider documents that were not presented at the district court. We have carefully considered our duties in light of the fact that we are reviewing a civil equitable proceeding involving a statute containing penal provisions which must be strictly construed against the State. In doing so, we are mindful that a technical application of the law to these particular circumstances may appear to unfairly deprive White, a pro se appellant, of his personal property.

From our vantage point we believe the district court bent over backwards to allow White to save his Jeep. The court granted a rehearing after White failed to appear at the

first setting. The court gave him ample opportunity to establish his ownership and carefully considered his documents before ruling. White did not ask for more time or a stay to obtain additional documents or supplement the record before the district court ruled. After White apparently obtained his Missouri title, he did not ask for a remand of this case to the district court for the presentation of additional evidence which might have caused the district court to reverse its order. The arguments he makes on appeal were either not raised in district court or have no legal merit. As a result, we are left with a result that is legally sound in all respects but unfortunately results in a significant hardship for White. Under the circumstances we have no choice but to affirm the district court's decision.

Affirmed.